# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MICHELLE MATHIS,**

    **Plaintiff,**

                                                                             Civil Action 2:12-cv-156

        **v.**                                                    Judge George C. Smith

                                                            Magistrate Judge E.A. Preston Deavers

**DOCTOR'S HOSPITAL (WEST),** *et al.,*

    **Defendants.**

## ORDER and INITIAL SCREEN REPORT AND RECOMMENDATION

Plaintiff, Michelle Mathis, who is proceeding without the assistance of counsel, brings this action against Doctor's Hospital (West) and Riverside Methodist Hospital (collectively "Defendants"), asserting federal civil rights and state-law tort claims arising out her involuntary commitment and treatment. This matter is before the Court for consideration of Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*, which the Court **GRANTS**. (ECF No. 1.) Accordingly, it is **ORDERED** that judicial officers who render services in this action shall do so as if the costs had been prepaid. This matter is also before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's purported federal causes of action for failure to state a claim pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) and **DECLINE** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, **DISMISSING** these claims **WITHOUT PREJUDICE**.

**I.**

According to the Complaint, on January 14, 2012, Plaintiff believed that she was having a seizure and asked that emergency transportation services be called. When the emergency medical service team arrived, they restrained Plaintiff to a gurney. They then proceeded to search her property, seizing a gun that Plaintiff had carried in her purse. Plaintiff was transported against her will to Doctor's Hospital. Upon arrival to Doctor's Hospital's emergency room, medical personnel forcefully removed her clothing before restraining her to a hospital bed. Plaintiff alleges that she did not receive proper medical treatment for the symptoms she presented. Doctor's Hospital personnel restrained Plaintiff to the hospital bed for two or three days. Throughout this time, Plaintiff was placed on intravenous therapy and forced to use a catheter. After two or three days, Doctor's Hospital removed the hospital bed restraints.

On January 18, 2012, Doctor's West transferred Plaintiff to Riverside Methodist Hospital Behavior Health Center ("Riverside"). Plaintiff met with an intake nurse. On January 19, 2012, a physician informed her that she was being detained for "delusional or subtle signs of paranoia." (Coml. 7, ECF No. 1-2.) Riverside involuntarily committed her. Plaintiff appears to allege that the form utilized to detain her and the affidavit submitted to the state probate court did not comply with Ohio law and thus, her detainment beyond three days was unlawful. (*See id*.) She alleges that she attended a probate court hearing on January 25, 2012, but that the case was continued and that she did not receive notice of the next hearing date. On January 27, 2012, Dr. Kovell, a physician providing services at Doctor's West, informed Plaintiff that a court hearing was in progress and that she did not have the right to attend the hearing. As a result of that

hearing, the probate court authorized Dr. Kovell to continue to detain and medicate Plaintiff. Riverside released Plaintiff in February 2012.

In addition to asserting various state-law claims, Plaintiff asserts that Defendants are liable under 42 U.S.C. § 1983 because their actions deprived her of her constitutional rights. She seeks declaratory and injunctive relief as well as $20 million in statutory, compensatory, and punitive damages.

**II.**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \*   \*   \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31; *see also* 28 U.S.C. § 1915A (requiring the Court to screen a prisoner's complaint "as soon as practicable" and dismiss any

---

[1]Formerly 28 U.S.C. § 1915(d).

3

portion of a the complaint if it is frivolous, malicious, or fails to state a claim). Thus, § 1915(e) and § 1915A require *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Fed. R. Civ. P. 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont County Sheriff's Dept.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

4

# III.

## A. Plaintiff's Federal Claims

It appears that Plaintiff is attempting to bring her federal claims pursuant to 42 U.S.C. § 1983 for violation of her constitutional rights. The undersigned concludes, however, that Plaintiff's Complaint cannot support a cause of action under § 1983. In order to plead a cause of action under § 1983, Plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution of laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). *See also Dist. Atty's Office v. Osborne*, 557 U.S. 52, 129 S.Ct. 2308, 2318 (2009) (explaining that § 1983 is a federal civil rights statute "which gives a cause of action to those who challenge a State's 'deprivation of any rights . . . secured by the Constitution.'").

Plaintiff sufficiently pleads the deprivation of a right secured by the Constitution. Specifically, her allegations implicate her Fourteenth Amendment liberty and property interests. *See Addington v. Texas*, 441 U.S. 418, 425 (1979) (citations omitted) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.")

The undersigned, however, finds that Plaintiff's Complaint falls short with regard to the second element of a § 1983 claim. To sufficiently plead the second element, Plaintiff's Complaint must contain allegations from which the Court could conclude that Defendants' actions could be considered the actions of the State for purposes of § 1983 liability.[2] Defendants

---

[2] "If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action "under color of state law" for § 1983 purposes."

are both private hospitals. The conduct of a private entity may be considered state action "if, [and] only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood*, 531 U.S. at 295 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

The United States Court of Appeals for the Sixth Circuit employs three tests for determining whether the "color of state law" element is satisfied, namely the public function test, the state compulsion test, and the nexus test. *Ellison v. Univ. Hosp. Mobile Crisis Team*, 108 F. App'x 224, 226 (6th Cir. 2004) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). The Sixth Circuit has described these tests as follows:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) (internal quotation marks and citations omitted).

In *Ellison v. Garbarino*, the Sixth Circuit concluded that a private physician's decision to admit a patient pursuant to Tennessee's involuntary commitment statute did not implicate state action. *Id*. In reaching this conclusion, the Court reasoned that the state statute did not compel or encourage private individuals to pursue involuntary commitment and that the plaintiff had made no attempt to establish a sufficient "nexus" between defendants and the state. *Id*. at 196.

---

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982)).

6

The Court declined to address the state function test because the plaintiff had not offered any historical analysis, explaining that "[c]ourts that have addressed this issue have typically required some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state." *Id.* (citation omitted).

In *Ellison v. University Hospital Mobile Crisis Team*, the Sixth Circuit similarly concluded that a hospital's mobile crisis team, which had attempted involuntary commitment of the plaintiff on an emergency basis, had not acted under the color of state law. 108 F. App'x at 226–27. The Court rejected the plaintiff's offering of historical analysis in an attempt to satisfy the state function test. *Id*. The Court explained that "private actors have had authority to commit people involuntarily for around two hundred years. Given that this authority would predate the 1871 precursors of 42 U.S.C. § 1983 . . . as the law currently stands, traditional authority for involuntary commitment is not exclusive to the state in Ohio." *Id*. The Court likewise concluded that the plaintiff had not offered sufficient evidence to satisfy the other two tests. *Id*.

Applying the foregoing authority, the undersigned concludes that Plaintiff has failed to allege facts upon which this Court could conclude that Defendants acted under the color of state law. First, Plaintiff does not allege that Ohio's statutes compel or encourage private individuals to pursue involuntary commitment. Likewise, Plaintiff alleges no facts showing that the state had a sufficiently close relationship with Defendants such that their private conduct could be fairly attributed to the state for purposes of § 1983 liability. Finally, in light of *Ellison*, Plaintiff cannot demonstrate state action with regards to her involuntary commitment via the public function test. *See Ellison*, 108 F. App'x at 226–27.

Because Plaintiff has failed to state any valid § 1983 claims against Defendants, the

7

undersigned **RECOMMENDS** that the Court **DISMISS** her federal claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

B.  **Jurisdiction Over Plaintiff's State-Law Claims**

Because the undersigned recommends dismissal of all of Plaintiff's federal claims, the undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law tort claims.

"The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for '[f]ederal-question' jurisdiction, and § 1332, which provides for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Federal-question jurisdiction is invoked when a plaintiff pleads a claim "arising under" the federal laws or the Constitution. *Id*. (citation omitted). For a federal court to have diversity jurisdiction pursuant to Section 1332(a), there must be complete diversity, which means that each plaintiff must be a citizen of a different state than each defendant, and the amount in controversy must exceed $75,000. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Plaintiff, on her Civil Cover Sheet, identified federal question jurisdiction as the only basis for subject matter jurisdiction. (*See* ECF No. 1-1.) In her Complaint, however, she asserts that jurisdiction is appropriate under both the general federal question jurisdiction statute, 28 U.S.C. § 1331, and the diversity jurisdiction statute, 28 U.S.C. § 1332. Plaintiff cannot invoke diversity jurisdiction because she indicates on her Civil Cover Sheet that both she and Defendants are citizens of Ohio. (*Id*.) Thus, jurisdiction is only appropriate under § 1331, the federal question jurisdiction statute.

Dismissal of Plaintiff's federal claims would not divest this Court of subject-matter jurisdiction. Instead, when a federal court dismisses "all claims over which it has original

jurisdiction," it must then exercise its discretion to determine whether to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The United States Court of Appeals for the Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (internal quotations marks and citation omitted). Accordingly, it is recommended that the Court decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

**IV.**

In summary, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* is **GRANTED**. (ECF No. 1.) Accordingly, it is **ORDERED** that judicial officers who render services in this action shall do so as if the costs had been prepaid. In addition, for the reasons set forth above, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's purported federal causes of action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Moreover, it is **RECOMMENDED** that the Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and that the Court **DISMISS** these claims **WITHOUT PREJUDICE**. Finally, the Clerk is **DIRECTED** to send a copy of this order to the Ohio Attorney General's Office, 150 E. Gay St., 16th Floor, Columbus, Ohio 43215.

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [th defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted))

**IT IS SO ORDERED.**

Date: March 22, 2012                                /s/ *Elizabeth A. Preston Deavers*
                                                                                       Elizabeth A. Preston Deavers
                                                                                       United States Magistrate Judge